**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ANTHONY ACAMPORA, on behalf of himself and similarly situated employees, | ) | No. 2:24-1296 |
| Plaintiff, | ) | Judge Robert J. Colville |
| v. | ) | |
| PNC BANK, | ) | |
| Defendant. | ) | |

**MEMORANDUM ORDER OF COURT**

Robert J. Colville, United States District Judge

Before the Court is a Partial Motion to Dismiss (ECF No. 17) filed by Defendant PNC Bank, National Association ("PNC"). PNC seeks dismissal of Count III of Plaintiff's Amended Complaint (ECF No. 9) pursuant to Federal Rule of Civil Procedure 12(b)(1), arguing that Plaintiff cannot establish Article III standing because he fails to allege a downstream injury-in-fact tied to PNC's alleged statutory violations of Article 6, § 195(3) of the New York Labor Law ("NYLL"). ECF No. 17 at 1-2. Plaintiff opposes the Partial Motion to Dismiss. The Court has jurisdiction in this matter pursuant to 28 U.S.C. § 1331, and has supplemental jurisdiction over any state-law claims pursuant to 28 U.S.C. § 1367.

## I. Background

Plaintiff brings his claims on behalf of himself and a putative collective and class of mortgage loan officers ("MLOs") who work or have worked for PNC nationwide. ECF No. 9 at ¶ 1. He asserts claims against PNC arising out of PNC's purported failure to comply with the Fair Labor Standards Act, 29 U.S.C. §§ 201, et seq. ("FLSA") (Count I – Failure to Pay Overtime) and the NYLL (Count II – Failure to Pay Overtime; Count III – Failure to Provide Accurate Wage

Statements).[1] ECF No. 9 at ¶ 2. Plaintiff sets forth the following allegations relevant to the fairly limited issue presented by the Partial Motion to Dismiss:

Plaintiff worked as an MLO for PNC in Staten Island from in or about November 2018 until on or about September 23, 2022. ECF No. 9 at ¶ 34. He and other MLOs were paid a salary of approximately $3,000 per month and were paid a commission based on sales of mortgage loan products. *Id.* at ¶¶ 36-39. Plaintiff asserts that he and the other MLOs are and have been non-exempt employees within the meaning of the FLSA and the NYLL. *Id.* at ¶¶ 40-41. PNC failed to pay MLOs overtime compensation in an amount calculated at 1.5 times their regular rates of pay for all hours worked above 40 in a workweek, as well as proper overtime wages on commissions earned. *Id.* at ¶¶ 22; 57-60.

Plaintiff and the other MLOs were required to use the same PNC work applications and other forms of electronic communications. ECF No. 9 at ¶ 56. PNC maintains a company-wide timekeeping system that MLOs are instructed to utilize. *Id.* at ¶¶ 42-43. MLOs were discouraged from accurately recording their hours in PNC's timekeeping system. *Id.* at ¶ 44. Plaintiff and other MLOs normally recorded working 35-40 hours in most workweeks, though they regularly worked more than 40 hours. *Id.* at ¶¶ 45-49. PNC was aware that Plaintiff and other MLOs were working more hours than the hours recorded in the company-wide timekeeping system. *Id.* at ¶¶ 50-55.

PNC failed to provide MLOs with accurate statements of wages because the paystubs PNC provided failed to notate the correct number of hours that MLOs actually worked. ECF No. 9 at ¶ 64-65. MLOs relied on their paystubs to ensure that PNC had paid the MLOs the correct rate and

[1] With respect to his FLSA claim, Plaintiff intends to pursue a nationwide collective. With respect to his NYLL claims, he intends to pursue a class action of MLOs who worked for PNC in New York City between January 12, 2018 and the date of final judgment in this matter. *See* ECF No. 9 at ¶¶ 20-33.

that they had been paid for all of their hours worked. *Id.* at ¶ 66. Plaintiff asserts that, accordingly, PNC misinformed MLOs about the correct number of hours they had worked, thus depriving MLOs of the information necessary for review of their wages and hours worked. *Id.* at ¶ 67.

The parties have filed the following docket entries relevant to the Court's consideration of the Partial Motion to Dismiss: (1) PNC's Brief in Support (ECF No. 18); (2) Plaintiff's Brief in Opposition (ECF 21); (3) PNC's Reply (ECF No. 22); (4) Plaintiff's Surreply (ECF No. 25); (5) Plaintiff's Notice of Supplemental Authority (ECF No. 26); and (7) PNC's Response (ECF No. 27) to Plaintiff's Notice of Supplemental Authority. The Partial Motion to Dismiss has been fully briefed and is ripe for disposition.

## II. Legal Standard

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) challenges the "court's 'very power to hear the case.'" *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 (3d Cir. 2006) (quoting *Mortensen v. First Federal Savings and Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). The party asserting the existence of federal jurisdiction bears the burden of proving that jurisdiction over the subject matter actually exists. *Brown v. Tucci*, C.A. No. 12-1769, 2013 WL 2190145 (W.D. Pa. May 20, 2013) (citing *Development Finance Corp. v. Alpha Housing & Health Care*, 54 F.3d 156, 158 (3d Cir. 1995)).

A "facial" challenge to subject matter jurisdiction assumes that the allegations of the complaint are true, but contends that the pleadings fail to present an action within the court's jurisdiction. *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). The United States Court of Appeals for the Third Circuit has explained:

> In reviewing a facial attack, "the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *In re Schering Plough Corp.*, 678 F.3d at 243 (quoting *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir.2000)) (internal

> quotation marks omitted). Thus, a facial attack calls for a district court to apply the same standard of review it would use in considering a motion to dismiss under Rule 12(b)(6), i.e., construing the alleged facts in favor of the nonmoving party.

*Constitution Party of Pennsylvania v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014).

"Absent Article III standing, a federal court does not have subject matter jurisdiction to address a plaintiff's claims, and they must be dismissed." *Taliaferro v. Darby Twp. Zoning Bd.*, 458 F.3d 181, 188 (3d Cir. 2006). Under Article III of the United States Constitution, the power of the federal judiciary is limited to "cases" and "controversies." U.S. Const. art. III, § 2. To establish Article III standing, a plaintiff must show: "(1) that he or she suffered an injury in fact that is concrete, particularized, and actual or imminent, (2) that the injury was caused by the defendant, and (3) that the injury would likely be redressed by the requested judicial relief." *Thole v. U. S. Bank N.A.*, 590 U.S. 538, 540 (2020). "Although 'general factual allegations of injury resulting from the defendant's conduct may suffice,' the complaint must still 'clearly and specifically set forth facts sufficient to satisfy' Article III." *Reilly v. Ceridian Corp.*, 664 F.3d 38, 41 (3d Cir. 2011) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *Whitmore v. Arkansas*, 495 U.S. 149, 155, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990)).

## III. Discussion

As noted, the issue presented in PNC's Partial Motion to Dismiss is a limited one: whether Plaintiff lacks Article III standing to pursue Count III due to a failure to plead any downstream injury-in-fact tied to PNC's alleged statutory violations of the NYLL. In response to the Partial Motion to Dismiss, Plaintiff argues that PNC's assertion respecting standing is "contrary to the rulings by the Second Circuit and the District Courts in the Second Circuit on this issue[,]" and that PNC "ignores that Plaintiff has alleged specific downstream consequences that have harmed Plaintiff." ECF No. 21 at 1.

Plaintiff's claim at Count III, titled "failure to provide accurate wage statements," relies on an assertion that PNC "failed to supply Plaintiff and the NYLL class with an accurate statement of wages with every payment of wages as required by NYLL, Article 6, § 195(3)." ECF No. 9 at ¶ 82. On behalf of himself and the putative New York class, Plaintiff seeks statutory penalties of $250 for each workday that PNC provided inaccurate wage statements, or a total of $5,000 each, as well as fees and costs. *Id.* at ¶ 83. In seeking dismissal of Count III, PNC argues:

> While [Plaintiff's] allegations may state technical violations of the NYLL, the Third Circuit has held that a complaint alleging a technical NYLL violation seeking statutory penalties only does not demonstrate Article III standing because it fails to allege a concrete, particularized injury-in-fact, which is required for subject matter jurisdiction in federal court.

ECF No. 18 at 5. In opposing PNC's Motion, Plaintiff argues that he has standing to bring his claim for an "informational injury" under § 195(3) because he has pled facts that plausibly allege the MLOs experienced "downstream consequences" arising from PNC's failure to provide accurate wage statements, and that he thus satisfies the standard articulated by the United States Court of Appeals for the Second Circuit in *Guthrie v. Rainbow Fencing Inc.*, 113 F.4th 300 (2d Cir. 2024). ECF No. 21 at 2.

Under the NYLL, an employer is required to provide a statement with every payment of wages to each of its non-exempt employees that sets forth, inter alia, "the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked." N.Y. Lab. Law § 195(3) (McKinney). "To qualify as a wage statement, a document 'must . . . contain all data identified by NYLL § 195(3).'" *Asencio v. Iris Spa in N. Castle Corp.*, No. 7:21-CV-06608 (NSR), 2025 WL 642250, at *4 (S.D.N.Y. Feb. 27, 2025) (quoting *Ametepe v. Peak Time Parking, Corp.*, No. 18CIV5384PAESDA, 2021 WL 1172669, at *7 (S.D.N.Y. Mar. 29, 2021)). Employees who are not provided such statements are

entitled to "damages of two hundred fifty dollars for each work[]day that the violations occurred or continue to occur, but not to exceed a total of five thousand dollars, together with costs and reasonable attorney's fees." N.Y. Lab. Law § 198(1-d) (McKinney).

As each party acknowledges, *Guthrie* sets the benchmark for Article III standing with respect to a § 195(3) claim. In *Guthrie*, the Second Circuit agreed with the district court that "a plaintiff cannot rely on 'technical violations' of the Labor Law[,] but must allege 'actual injuries suffered as a result of the alleged . . . wage notice and wage statement violations.'" *Guthrie*, 113 F.4th at 305. It further agreed "with those district courts that have held that a plaintiff must show some causal connection between the lack of accurate notices and the downstream harm." *Id.* at 308. The Second Circuit explained:

> The legislature may have intended to empower employees to advocate for themselves, but unless the plaintiff-employee can show that he or she would have undertaken such advocacy and plausibly would have avoided some actual harm or obtained some actual benefit if accurate notices had been provided, the plaintiff-employee has not established a concrete injury-in-fact sufficient to confer standing to seek statutory damages under § 195.

*Id*. It ultimately concluded that, "[w]ithout plausible allegations that [plaintiff] suffered a concrete injury because of [defendant's] failure to provide the required notices and statements, [plaintiff] lacks standing to sue for that statutory violation." *Id.* at 311.

Of the cases cited by the parties, *Weller v. Icahn Sch. of Med. at Mount Sinai*, No. 23-CV-4775 (PKC) (LB), 2025 WL 745992, at *3 (E.D.N.Y. Mar. 7, 2025), which was decided after *Guthrie*, is most analogous to the present case. In *Weller*, the plaintiff alleged that he complained to his employer after being provided a timesheet and wage statement that did not accurately reflect his hours worked. The plaintiff characterized the injury allegedly caused by the wage statements as "ambiguity, confusion, inability[,] and difficulty in reconciling timesheets with wage statements, inability to reconcile claimed time with time actually compensated, difficulty in

making expostulations to Defendants of underpayment of wages, and ultimately underpayment of wages." *Weller*, 2025 WL 745992, at *6 (citation to record omitted). The United States District Court for the Eastern District of New York dismissed plaintiff's § 195(3) claim, holding that the plaintiff's "unpaid wage claims stem[med] from Defendants' communicated wage and hour policies and the disputed hours on Plaintiff's timesheets, irrespective of noncompliant wage statements" and explained that, "[a]s Defendants correctly note, any alleged recordkeeping violation 'did not prevent Plaintiff from deciding that he was underpaid and promptly raising issues regarding his pay.'" *Id.* at *7. The *Weller* court concluded: "[a]s there is no indication here that the alleged informational injury itself prevented Plaintiff from advocating for himself and resulted in lost wages, Plaintiff has failed to show a 'causal connection between the lack of accurate notices and the downstream harm.'" *Id.* (quoting *Guthrie*, 113 F.4th at 308).

The Court perceives no meaningful distinction between the instant case and *Weller*, and the Court agrees with the analysis and conclusions set forth in *Weller*. *See also Lock v. Costco Wholesale Corp.*, No. 2:23-CV-07904 (NJC) (ST), 2024 WL 4728594, at *5 (E.D.N.Y. Nov. 8, 2024) (dismissing a § 195(3) claim for lack of standing where: "Plaintiffs' declarations demonstrate that Plaintiffs knew they were working more than forty hours a week at the time they worked those hours, and Plaintiffs have not identified any evidence indicating otherwise[,]" and explaining that: "Plaintiffs have therefore failed to demonstrate that Costco's allegedly inaccurate wage statements caused them injury by failing to notify them that they worked over forty hours a week, as alleged in the Complaint.").

In the present case, Plaintiff pleads that he and the MLOs were on full notice that they themselves were underreporting hours, even if it was at the direction of PNC. The same can only logically support a conclusion that the MLOs were not, as Plaintiff claims, "deprived of the

information necessary for review of their wages and hours worked." ECF No. 9 at ¶ 67. Put another way, Plaintiff relies on a theory that he and the MLOs were deceived by PNC's wage statements. The same cannot be squared with the allegation that he and the MLOs *knowingly* reported hours inaccurately at PNC's direction. Accordingly, Plaintiff cannot plausibly allege that *the wage statements* prevented the MLOs from realizing that they were being underpaid. Given Plaintiff's allegations, Plaintiff cannot plausibly allege a "causal connection between the lack of accurate notices and the downstream harm." *See Guthrie*, 113 F.4th at 308. Rather, as alleged, it was PNC's alleged discouragement of accurate hour reporting that caused Plaintiff's harm. Accordingly, while Plaintiff alleges a technical violation of the wage statement requirement, he does not plausibly allege that he and the MLOs were injured by the inaccurate wage statements. For that reason, the Partial Motion to Dismiss will be granted. Because the Court finds that amendment would be futile, Count III will be dismissed with prejudice.

## IV. ORDER OF COURT

For the reasons discussed above, the Court finds that Plaintiff fails to state a claim under § 195(3) of the NYLL. PNC's Partial Motion to Dismiss is granted. The Court finds that amendment would be futile, and Count III is hereby dismissed with prejudice. PNC shall file an answer to Plaintiff's remaining claims by September 14, 2026.

BY THE COURT:

*/s/Robert J. Colville*________
Robert J. Colville
United States District Judge

DATED: August 31, 2026

cc: All counsel of record